# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE INDIANA, ILLINOIS AND IOWA RAILROAD COMPANY

*v.*

ADOLPH STAUBER *et al.*

*Opinion filed April 17, 1900.*

1. EMINENT DOMAIN—*section 6 of the Eminent Domain act construed.* Section 6 of the Eminent Domain act, (Rev. Stat. 1874, p. 476,) providing for the calling of a jury of freeholders to assess damages in condemnation, applies only where the petition is heard in vacation, and not at a regular term.

2. SAME—*juror in condemnation case heard in term time need not be a freeholder.* Where a condemnation petition is filed in term time, with a summons returnable on the first day of the succeeding term, and no order is entered fixing a day for hearing, the case may be tried at the succeeding term by a jury from the regular panel, who need not be freeholders.

3. SAME—*increased cost of insurance is an element of damage.* The increase in the cost of insuring buildings upon property not actually taken for right of way by reason of construction and operation of the railroad may be shown by expert witnesses in condemnation.

4. SAME—*increased danger from fire which lessens value of property may be shown.* Increased danger from fire by reason of the operation of the railroad, which lessens the salable value of the property, or the value of the use to which the property is put or to which it is adapted, is an element of damage in condemnation.

Appeal from the County Court of LaSalle county; the Hon. H. W. Johnson, Judge, presiding.

This was a proceeding commenced by the Indiana, Illinois and Iowa Railroad Company, in the county court of LaSalle county, to condemn the right of way for appellant's railroad company across the land of appellees. The petition was filed on the 17th day of October, 1899, in the office of the clerk of the county court, on one of the regular days of the September term of the LaSalle county court, but was addressed to the November term, the next succeeding term of that court. Summons was issued on the same day the petition was filed, and was returned served personally on Adolph Stauber and Mary Stauber, the appellees, and commanded them to appear on the first day of the November term of the county court. The record shows that the petition was not presented to the county judge in vacation, and shows that no order made by him fixing a day for hearing the same in vacation, or any special venire for jurors. The trial was begun on the first day of the November term before a regular panel of jurors duly summoned for the trial of cases at that term.

The amount of land proposed to be taken for right of way is about three-twentieths of an acre near the outskirts of the city of Streator, in LaSalle county, and it passes within about ten feet of appellees' factory. This factory building is constructed of brick, about forty-five feet wide by one hundred and twenty feet long and three stories high. It is fitted with machinery for the purpose of manufacturing pantaloons, linen suits and shirts, and it requires from one hundred and fifty to two hundred employees to carry on appellees', business.

Appellee Adolph Stauber filed a cross-petition, setting up that on the said tract of land, and immediately adjoining the strip of land sought to be condemned, is situated this large three-story factory, and that the south

line of the factory, at the south-east corner, will be but ten feet from the right of way and that the south-west corner thereof will be about ten feet from that point; that immediately west of the factory and about eighty feet from it is situated a large two-story frame building used by cross-petitioner as a warehouse for the storing of his clothing and woolen goods manufactured, and also partly used as a stable; that between these two buildings stands the engine house used in and about the business; that the warehouse building will, at the south-west corner, be only about one foot from the proposed right of way and that the south-east corner will be less than three feet therefrom; that immediately north of the buildings is his residence; that the taking of this strip of land by the railroad will cut off his access to his factory and warehouse and property on the south side thereof, and will greatly inconvenience and damage him in and about the operation of his property, and will greatly lessen the value thereof and depreciate its value; that the factory and warehouse will be in great danger of being set on fire by engines passing to and fro, and will be greatly damaged by dust, cinders, ashes and gases and by smoke thrown out upon the premises and into the factory and warehouse by engines and cars passing over and along the railroad; that the insurance rate will be advanced about twenty-five per cent more than he is at present obliged to pay, which will be a lasting and continuing damage and loss to cross-petitioner; that the construction and operation of the railroad over and upon the strip of ground will greatly depreciate in value all his properto thereto adjoining, in addition to the amount of compensation to be assessed for land actually taken.

A hearing was had and the cause submitted to a jury, who returned a verdict fixing the compensation to be paid defendant Adolph Stauber for the land actually taken as right of way through his land at $87.50, and for damages sustained to the tract of land and to all other real

estate owned by him or in which he has an interest, and which is described in the petition and cross-petition, and not actually taken for right of way, at $1000. Motions for a new trial and in arrest of judgment were overruled, and petitioner appealed.

CARY & WALKER, and REEVES & BOYS, for appellant.

P. J. LUCEY, and V. J. DUNCAN, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is first insisted upon by appellant that the court erred in holding that when a condemnation proceeding is heard by a jury chosen from the regular panel it is not an essential qualification of a juryman that he should be a freeholder. By the statute on eminent domain (Rev. Stat. chap. 47, sec. 2,) the corporate or municipal authority, public body, officer, agent, person, etc., desiring to take private property for public use without the owner's consent, where the compensation to be paid for cannot be agreed upon by the parties interested, may "apply to the judge of the circuit or county court, either in vacation or term time, where the said property or any part thereof is situate, by filing with the clerk a petition, setting forth, by reference, his or their authority in the premises, the purpose for which said property is sought to be taken or damaged,   *   *   *   and praying such judge to cause the compensation to be paid to the owner to be assessed," etc. If the application is to the judge in vacation, more than the *filing* of the petition is required. Section 3 provides: "If such petition be presented to a judge in vacation, the judge shall note thereon the day of presentation, and shall also note thereon the day when he will hear the same, and shall order the issuance of summons to each resident defendant, and the publication of notice as to each non-resident defendant, and the clerk of the court shall at once issue the summons and give

the notices accordingly." Section 6 provides for calling a jury in vacation where the judge has fixed the time for hearing the petition in vacation, and applies only in such cases, and there is no provision made for obtaining a jury where the cause is to be heard in term time.

It was said in *Hercules Iron Works* v. *Elgin, Joliet and Eastern Railway Co.* 141 Ill. 491 (on p. 496): "There is no provision made for obtaining a jury where the cause is to be heard in term time, and it follows, necessarily, we think, that the compensation is to be ascertained by the jury regularly impaneled for the term. The panel having been selected according to the statute regulating the selection and choosing of jurors for the court, a jury is provided for the ascertainment of compensation as 'prescribed by law.' * * * In the case last cited (*Haslam* v. *Galena and Southern Wisconsin Railroad Co.* 64 Ill. 353,) we held that section 6 should be construed to read, that 'in cases fixed in vacation for hearing it shall be the duty of the clerk,' etc., and it is clear that without the order of the judge fixing a day for the hearing there is no power or authority to draw a special jury in accordance with that section of the act. It is the order of the judge, in vacation, fixing a day for the hearing, etc., that determines its character as a proceeding in vacation. But when the petition is filed with the clerk, in vacation, and no order is made by the judge fixing a day for the hearing, it is correct practice, under the statute, for the clerk to issue summons returnable to the ensuing term of court, as in other cases and as was here done. The application is then treated as made to the judge in term time, and stands for hearing upon the docket of the term at any time not less than ten days after due service of process. Rev. Stat. chap. 47, sec. 5; *Bowman* v. *Venice and Carondolet Railway Co.* 102 Ill. 459; *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 id. 413."

The petition in the case under consideration being heard in term time, by a jury selected from the regular

panel, it becomes necessary to determine the qualifications of petit jurors regularly impaneled for the trial of causes in courts of record.

Section 2 of the act concerning jurors, approved and in force February 11, 1874, (Rev. Stat. chap. 78, p. 630,) gives the qualifications of petit jurors to be selected by the county board from the jury list, as follows: "First, inhabitants of the town or precinct not exempt from serving on juries. Second, of the age of twenty-one years or upwards, and under sixty years old. Third, in the possession of their natural faculties, and not infirm or decrepit. Fourth, free from all legal exceptions, of fair character, of approved integrity, of sound judgment, well informed, and who understand the English language." This statute nowhere provides that it is a necessary qualification of a juror that he be a *freeholder*, when chosen from the regular panel for the term, and the court did not err in holding that in the trial of the case under consideration, to condemn a right of way, where the petition was filed with the county clerk but no order was made by the judge fixing a day for the hearing, and the summons was returnable to the first day of the next (November) term of court, and the case was tried before a jury chosen from the regular panel for the term, it was not an essential qualification of a juryman that he be a freeholder. This court has expressly held in the case of *Kerwin* v. *People*, 96 Ill. 206, that the fact that a person is not a freeholder does not disqualify him from serving on a jury and is not a ground of challenge.

It is insisted the court erred in admitting evidence pertaining to the question of increase of insurance rates upon the property by reason of the building and operation of the railroad, and in giving the seventh instruction on the part of appellees. The evidence shows that the right of way sought to be condemned by appellant comes within nine feet of the south-east corner of the factory building and within one foot of the south-west

corner of the stable building or warehouse; that the main track, as it appeared upon the plat, was about twenty-eight feet from the south-east corner of the stable building or warehouse and 30.2 from the south-east corner of the factory building, and the length east and west along defendant Stauber's property was 337½ feet. The three witnesses called by appellees to give their opinion were all men who had had experience in insuring property, and were at the time, and for several years prior to their being called as witnesses had been, actively engaged in the insurance and real estate business, and their testimony may be regarded in the nature of expert testimony. After some preliminary questions the following question was asked George W. Rose: "As an insurance agent, and experienced in insurance matters as you are, what, in your judgment, will be the effect on the building and operation of this line of railroad and the right of way,— the right of way involved in this proceeding,—so far as it affects the insurance placed upon the premises by Mr. Stauber?" Objection was made by appellant and overruled, and exception was taken to the ruling of the court. The answer of the witness was: "I think it will increase the hazard. Increasing the hazard would increase the premium." He was then asked: "To what extent, in your judgment, would the premiums be increased by reason of it?" (Objection, overruled, and exception.) He answered: "I am unable to say positively; in my judgment, probably about twenty per cent." Hypothetical questions were asked Colwell and Warner, two other witnesses who were engaged in the business of insuring property, and their answers were to the same effect, except they fixed the increase in premiums from twenty to twenty-five per cent; that it would raise the rate from $1.50 to $1.70 or $1.75 per $100.

This evidence was proper. The increase of the cost of insurance may be given in evidence as affecting the amount of recovery. In the case of *Webber* v. *Eastern*

*Railroad Co.* 43 Mass. (2 Metc.) 147, which was a proceeding upon a petition for a jury to assess the damages sustained by the petitioner by the laying out of the Eastern railroad over his land, one of the exceptions by the respondents was to the testimony of John W. Proctor, called as a witness by the petitioner. The witness was called to give his opinion upon the question whether the proximity of a railroad would be likely *to increase the rate of premium on insurance against fire,* when it did not appear that his acquaintance with the subject was such as would warrant him to give his opinion in evidence. The court says: "It is true that in answer to a cross-interrogatory Mr. Proctor answered that he did not profess to be an expert. But his statement of his experience and means of knowledge in estimating the risks against fire, from his long having been secretary of a fire insurance office and having been charged with the duty of examining buildings, and taking into consideration all circumstances bearing upon the risk and the rate of premium, rendered him, we think, quite competent to give his opinion as evidence to the jury upon that subject." *Wooster* v. *Sugar River Valley Railroad Co.* 57 Wis. 311; 10 Am. & Eng. R. R. Cases, 499.

Instruction No. 7 comes clearly within the rule laid down by this court in *Centralia and Chester Railroad Co.* v. *Brake,* 125 Ill. 393, where we said (p. 398): "If by reason of the proximity of buildings, fences and the like to the track of the railroad the market value of the farms, as a whole, was depreciated, or if, from the ordinary and usual manner of the operation of the road, the danger from fire had a tendency to lessen the value of the premises for sale, or for the use to which they were appropriated by the owner or to which they are adapted, that fact would become an important element in fixing the just compensation to be awarded the owner for the appropriation of his land to the uses of appellant company."

It is urged by appellant that the verdict is contrary
to the evidence. The petition represented, in the usual
form, that it was necessary to enter upon and appro-
priate certain lands of appellees. Appellees filed their
cross-petition to have the property damaged, but not de-
scribed in the petition, assessed. This included the fac-
tory and other buildings. A large number of witnesses
were called by petitioner to show the value of the strip
of land taken, which varied from $100 to $500 per acre.
The amount contained in the strip was three-twentieths
of an acre. Many of petitioner's witnesses thought the
property of appellees was benefited by the railroad.
Appellees called about the same number of witnesses,
who fixed the value of the land at from $500 to $800 per
acre, and the damages to the property—the depreciation
in its market value—from $1000 to $5000. The verdict of
the jury fixed the compensation to be paid to appellees
for the right of way at $87.50, and fixed the damages to
the tract of land described in the petition, and to other
real estate described in the petition and cross-petition
and not actually taken, at $1000. The jury viewed the
premises, and were instructed that it was their right, in
determining the damages, to take into account their own
observation resulting from the view made by them of the
premises, in connection with all the other testimony in
the case; and in arriving at their verdict they had the
right, in connection with all the other testimony, to give
to their own observation thus made such weight as in
their judgment they believed such observation was en-
titled to. As this court said in *Pittsburg, Fort Wayne and
Chicago Railway Co.* v. *Lyons,* 159 Ill. 576: "The jury them-
selves viewed the property, and amid such conflicting
testimony were probably largely influenced, in making
up their verdict, by their own calculations made from
a personal inspection of the premises. * * * We do
not know what weight the jury may have given to the
testimony of the witnesses for appellees and appellant,

respectively, or to what extent they relied upon the evidence obtained by them from their own view of the premises. We cannot therefore say whether the damages are excessive and against the weight of the evidence or not. *Maywood Co.* v. *Village of Maywood,* 140 Ill. 217; *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 id. 188; *Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 id. 316."

We do not regard the damages as grossly excessive under the evidence in this case, and it is the settled doctrine of this court that the damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting and the jury viewed the premises. *Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 Ill. 547.

Finding no error in the record the judgment of the county court is affirmed.        *Judgment affirmed.*