THE CITY OF CHICAGO, Appellee, vs. CHARLES LEDERER
et al.—(THE PRICE BAKING POWDER COMPANY, Ap-
pellant.)

*Opinion filed October 24, 1916.*

1. EMINENT DOMAIN—*what requires accurate rulings of court
and correct instructions to jury.* In a condemnation proceeding,
if the evidence is evenly balanced as to the value of the property
taken, although there is a view of the premises by the jury, there
must be accurate rulings from the court and correct instructions
to the jury.

2. SAME—*copy of deed to show value of land is not admissible
without proof of loss of original.* A copy of a deed is not admis-
sible in evidence to show the value of land taken in a condemna-
tion proceeding until the statutory proof of loss of the original
deed is made.

3. SAME—*what deed is too remote to be admissible to show the
value of land taken.* A deed bearing date more than seven years
prior to the institution of condemnation proceedings is too remote
for the consideration expressed in it to have any legitimate bear-
ing on the value of land sought to be taken for the opening of a
street in the city of Chicago and is not admissible in evidence.

4. SAME—*when ordinance restricting right of egress over side-
walks is admissible to show damage to land not taken in proceeding
to open a street.* In a condemnation proceeding for the opening
of a street through property owned by a corporation, if the owner
has filed a cross-petition claiming damages for land not taken it
may introduce a city ordinance restricting the right of egress over
sidewalks, which ordinance might, if a sidewalk were built along
the proposed street, interrupt its use of a driveway which it has
maintained on its property across the site of the proposed street,
and the fact that such ordinance is a police regulation will not af-
fect its right to introduce it.

5. SAME—*when report of commissioners to estimate value of
the land taken and amount of benefits has no weight as evidence.*
In a condemnation proceeding for the opening of a street, if the
parties introduce evidence as to the value of the land taken and
the damage to land not taken, the report of the commissioners
designated to investigate and report to the court the just com-
pensation to be made for land taken or damaged and the amount
of benefits has no weight as evidence, and it is error to instruct
the jury that it is *prima facie* evidence.

6. SAME—*value of property to be taken cannot be depreciated
by proceeding to condemn.* Where a city seeks to condemn prop-

erty for the opening of a street the owner of the property is entitled to have the jury value the strip of land to be taken as though it would always remain private property, and the city is not entitled to have the strip valued as for street purposes, only, if its fair value for other purposes is greater.

7. SAME—*property must be valued at its best use as shown by the evidence.* In a proceeding to condemn land for a street the property to be taken must be valued at its highest and best use as shown by the evidence, even though the owner may not be putting the property to such use.

8. INSTRUCTIONS—*when instruction as to weight of testimony is erroneous.* An instruction which states that the testimony of one credible witness is entitled to more weight than the testimony of many others if, as to the other witnesses, the jury have reason to believe, and do believe from all the evidence and facts, that such other witnesses have knowingly testified untruthfully and are not corroborated by other credible witnesses, is erroneous in omitting the element that the untrue testimony be upon a material matter and in not limiting the corroboration to other credible evidence.

APPEAL from the County Court of Cook county; the Hon. S. N. HOOVER, Judge, presiding.

KING, BROWER & HURLBUT, for appellant.

HARRY F. ATWOOD, and ARTHUR E. WALLACE, (SAMUEL A. ETTELSON, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On November 10, 1913, the city of Chicago filed in the county court of Cook county a petition to condemn lands and to ascertain the compensation to be paid to the owners of such lands for the opening of Fillmore street between Independence boulevard and Central Park avenue, in the city of Chicago, and to assess against the property the amount which it is benefited by the improvement. The petition is based on an ordinance which was therein set forth, passed by the city council of said city October 15, 1913, which ordered said street to be opened between the points

above named and directed that the cost thereof be paid by special assessment, and that upon payment of the amount awarded by the jury as compensation for the land to be .taken the city take possession thereof and remove therefrom all buildings and obstructions. The west end of Fillmore street on the east abutted on the east line of the Price Baking Powder Company's property and the east end of that street on the west abutted on the west line of its property. It was sought by this proceeding to take the south 65.98 feet of the Price company's property and two-hundredths of a foot from another land owner on the south, so as to make Fillmore street a continuous street 66 feet wide. The commissioners appointed to ascertain the amount of compensation to be paid to the owners of the property to be taken and to spread the assessment of benefits fixed the compensation for the land to be taken belonging to the Price company at $7498, and fixed the amount of the benefits of said improvement to the land of that company at $3000. On a trial by jury there was a verdict fixing the amount of compensation for the land of the Price company to be taken at $7500 and the amount of benefits to its land not taken at $3000. Motions for new trial and in arrest of judgment were overruled and judgment was entered on the verdict, and the Price Baking Powder Company prosecutes this appeal.

Appellee introduced in evidence the assessment roll and the testimony of several witnesses as to the value of the land to be taken and as to the benefits that would accrue from the improvement to the land not taken. Appellant introduced the testimony of a number of witnesses upon the same questions, and the jury viewed the premises. The opinions of the witnesses for appellant and those for appellee, as is usual in such cases, varied widely as to the value of the land to be taken and as to the benefits. The value of the land to be taken as fixed by appellant's witnesses ranged from $16,000 to $17,000, and as fixed by appellee's

witnesses, from $4000 to $6000. The testimony of appellant's witnesses was to the effect that the property of appellant not taken would be damaged, and the testimony of appellee's witnesses on that question was to the effect that it would be benefited to a larger amount than that found by the jury.

Appellant insists that the verdict and judgment are contrary to the weight of the evidence, and that the court erred in its rulings on the admission and exclusion of evidence and in the giving and refusing of instructions. It is only proper to say at this time that the evidence was of such character that it demanded accurate rulings from the court and correct instructions to the jury to permit the verdict and judgment to stand,—that is to say, the evidence is so evenly balanced that it is a very close question whether or not the verdict should stand, although there was a view of the premises by the jury. As the judgment will have to be reversed for errors in the record it is not deemed proper to further comment on the merits of the evidence.

The first error argued by appellant is that the court, over its objection, permitted appellee to introduce in evidence a certified copy of the deed from the Mercy Hospital and Mercy Orphan Asylum of Chicago to appellant for the land described in the assessment roll, without the preliminary proof which is required by the statute to admit a certified copy of a deed in evidence. The deed is dated February 2, 1906, and the consideration therein named is $15,000, and appellee introduced the deed for the purpose of proving the purchase price of the lot and for all other purposes that it might serve. The court erred in overruling appellant's objection. Section 36 of the chapter on conveyances (Hurd's Stat. 1909) requires that before a copy of a deed may be admitted in evidence in any cause at law or equity, the party to said cause, or his agent or attorney in his behalf, shall orally in court, or by affidavit to be filed in said cause, state under oath that the original of such deed, which shall have

been or may thereafter be acknowledged or proved according to any law of this State and which by virtue of any of the laws of this State shall be required or be entitled to be recorded, is lost or not in the power of the party wishing to use it on the trial, and that to the best of his knowledge said original deed was not intentionally destroyed or in any manner disposed of for the purpose of introducing a copy thereof in the place of the original. No such proof was made and no notice was given to appellant to produce such original deed. The copy of the deed should have been excluded from evidence until the statutory proof was made. (*Scott* v. *Bassett,* 174 Ill. 390.) Furthermore, the date of said deed was more than seven years prior to the time the petition in this case was filed, and it was too remote for the consideration expressed in it to have any legitimate bearing on the value of the land at the time the petition was filed and was incompetent evidence for that purpose. *Lanquist* v. *City of Chicago,* 200 Ill. 69.

Appellant offered in evidence an ordinance of the city of Chicago enacted July 28, 1913, the substance of which is that no person or corporation shall thereafter construct or maintain driveways which depress or elevate the established grade of a public sidewalk, across public sidewalks, without first obtaining an order so to do from the city council, and that in order to obtain such a permit an application must be made to the commissioner of public works, accompanied by plans and specifications showing the proposed driveway and accompanied by a bond executed by the grantee, running to the city of Chicago, in the penal sum of $10,000, with sureties to be approved by the commissioner of public works, conditioned upon the faithful observance of all the conditions and terms of said permit, to indemnify the city against all liabilities, judgments, accidents, etc., which may come against the city in consequence of granting such permit or by reason of any act or thing done by the grantee by virtue of the permit, and that the permit may be revoked

either by the mayor or city council at any time without the consent of the grantee, and thereupon the sidewalk be restored to its former condition at the expense of the grantee. The ordinance allows driveways over sidewalk space which do not elevate or depress the regular grade of the street, upon permits issued by the commissioner of public works, upon the same conditions, in all other respects, as permits which are granted in case of an elevation or depression of the grade of the sidewalk, and fines are imposed for violations of the ordinance. Evidence for appellant tended to show that it enjoyed an unrestricted right of ingress to and egress from its property from the strip proposed to be taken east on Fillmore street and south through a 16-foot alley to the next street south of the block, and that it has a driveway leading through the boulevard on the west. We think that appellant should have been permitted to introduce the ordinance in evidence, as its provisions tended to restrict, and perhaps to deny, ingress to and egress from its property across any sidewalk that might be built on the north side of Fillmore street south of appellant's property. The right to team to and from its property was of very great importance to appellant and a right without which it could not very well get along. It had filed a cross-petition in which it claimed damages for the balance of its property, and it had a right to show that by said ordinance its right of ingress and egress would be greatly restricted and the value of its property thereby materially decreased. (*Pittsburg, Ft. Wayne and Chicago Railway Co.* v. *Lyons,* 159 Ill. 576.) The question whether or not the ordinance was a police regulation does not affect the right of appellant to have the benefit of it as evidence. Private property cannot be taken or damaged for public use, without due compensation, by police regulations of the character of the ordinance above set forth.

The court erred in giving instruction No. 16, "that the report of the commissioners designated to investigate and

report to the court the just compensation to be made to the respective owners of private property which would be taken or damaged for the proposed improvement, and also what the real estate will be benefited by such improvement, and the amount of such benefits to each parcel, is *prima facie* evidence both of the amount of the compensation to be awarded and of the benefits to be assessed." Such instruction states the law correctly only when the parties fail to introduce evidence upon the question of the value of the land sought to be taken and upon the question of the damages to the land not taken. When such evidence is offered the report of the commissioners ceases to have any weight as evidence, and it was error in this case to instruct the jury that said report was *prima facie* evidence, or any evidence whatever, as to the value of the land taken or damaged. *City of Rockford* v. *Mower,* 259 Ill. 604; *People* v. *Whitesell,* 262 id. 387.

Appellee's fourteenth instruction, "that the testimony of one credible witness may be entitled to more weight than the testimony of many others if as to those other witnesses you have reason to believe, and do believe, from all the evidence and all the facts before you, that such other witnesses have knowingly testified untruthfully and are not corroborated by other credible witnesses or by circumstances proved in the case," was erroneous. Practically the same instruction was condemned in *Johnson* v. *Farrell,* 215 Ill. 542, because the instruction omitted the hypothesis that such other witnesses knowingly testified untruthfully upon a material matter, and also because it did not limit the corroboration to other credible evidence. The foregoing instruction is particularly objectionable for the first reason given in that case.

Appellee's seventh instruction was erroneous and very prejudicial to appellant, to-wit: "And in this connection you are instructed that if you believe, from the evidence, that at and prior to the date of passage of the condemnation ordinance in this case the strip of land in question was

so located that the possibility or probability that it would be acquired for street purposes was of such a character as to affect the fair cash market value of the land, then the jury should take such possibility or probability into consideration in estimating the just compensation or damages." Appellant, before this condemnation ordinance was passed and this condemnation suit was begun, was the complete owner of the strip of land to be taken as well as of the remaining portion thereof, and had a right to use it for any purpose it desired, and for such purpose to erect any suitable buildings on said strip, notwithstanding the fact that it stood in the line of Fillmore street on both sides of it. It was not appellee's right to take it without just compensation,—*i. e.*, full compensation therefor. Appellee had no right to depreciate the property by menaces of any kind. Appellant was entitled to have the jury consider this property, in putting a value on it, upon the supposition that it would always remain in the same situation as it then was,— *i. e.*, in valuing this strip to be taken to value it as though it would always remain private property and not be taken as a street. It was the only way for appellant to receive full and just compensation for the property to be taken. All of the witnesses in this case were agreed upon one proposition: that the property of appellant, as a whole, was particularly valuable for industrial property or property for manufacturing purposes because of two facts,—its rectangular shape and the size of the property,—it being the opinion of the witnesses that the larger the property the more valuable it is for such purposes up to a size limit that is sufficient for any kind of an industrial plant. It is practically conceded by appellee's witnesses that appellant's property would be much more valuable with the strip to it than if it were taken away, on condition, only, that it be not menaced by the probability of its becoming a street. Appellant's evidence shows clearly that it had all the teaming privileges that it desired for its plant, and that these privi-

leges were private and uninterrupted by public travel or public privileges. There can be no question that it had the right either to continue to own and hold its property in that condition or to be paid full compensation for its loss in case the city took those rights and privileges away from it. The following testimony, in substance, given by one of appellee's witnesses will serve to show how appellant was prejudiced by the foregoing instruction: The witness, in comparing the advantages that another piece of land had over the tract of land in question, testified: "There is one other [advantage] which must be taken into consideration: that there is absolutely no attack against that tract [Sears-Roebuck tract.] In that respect it has a decided advantage over the Price company piece, which has been menaced by a condemnation proceeding both from east and west, which must act very materially on the value of the property." The witness then proceeded to further testify that for the above reason the strip in question is valuable only for street purposes, and not, in his judgment, valuable for industrial purposes, and upon that basis he valued the entire tract of the Price Baking Powder Company, approximately 414 feet long east and west by 205 feet north and south, and lying just south and contiguous to the Baltimore and Ohio Terminal railroad right of way, at $28,000, not considering the buildings, the south 66 feet at $5500. He then testified that the remainder of the property not taken would be worth $28,500 after the strip is taken away from it, or more than the entire tract is now worth according to his judgment, by reason, solely, of street privileges for teaming, etc., and for publicity to the property. In *Forster* v. *Scott,* 32 N. E. Rep. (N. Y.) 976, a statute was held invalid which provided that on the final opening of and condemnation of land for a street, a map of which had been filed by the department of parks, no compensation should be allowed for any building thereon after the filing of the map. In deciding the case the court said: "Whenever a law deprives an owner of the

beneficial use and free enjoyment of his property or imposes restraints upon said use and enjoyment that materially affect its value, without legal process or compensation, it deprives him of his property within the meaning of the constitution. All that is beneficial in property arises from its use and the fruits of that use, and whatever deprives a person of them deprives him of all that is desirable or valuable in the title and possession." In the instant case appellee is seeking by its own act of menace to the property in question, and did succeed apparently in the lower court, in having the strip in question shown valuable only for street purposes by reason of the fact that it lies in the line of Fillmore street, although the testimony of appellant tends to show that it is most valuable as industrial property and is needed by appellant for that purpose, and as a public street it would be detrimental to its business.

Appellant also complains of the refusal of the court to instruct the jury that depreciation caused by the passage of the ordinance to condemn must be added to the value of the land at the time of the filing of the petition. As above indicated, the jury were entitled to consider no evidence as to the value of the tract to be taken on the supposition that the property was menaced by the ordinance or otherwise. Witnesses in giving their estimates of value should have been restricted in their valuation from considering the fact that the property was so menaced by the ordinance, and should have valued it as at the date of filing the petition therein and upon the supposition that said property belonged absolutely to appellant, with full right to use it or build on it for any purpose it might see fit, and that it would continue to remain so notwithstanding the ordinance. The instruction asked for was not strictly accurate, and a proper ruling on the evidence will obviate the embarrassment in which appellant was placed. The court further erred, however, in refusing one of appellant's instructions, in effect, that if appellant's property was not put to its highest and

274 — 38

most advantageous use by it, nevertheless the compensation awarded must be for its highest and best value as shown by the evidence.

There are three other errors argued in the record, one on the admission of evidence, which the court afterwards corrected by excluding the evidence. The other two are not tenable, and it is therefore not necessary to comment further on them.

For the errors indicated, the judgment of the county court is reversed and the cause remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*