(No. 36067.—

CHICAGO HOUSING AUTHORITY, Appellee, *vs.* WILLIE LAMAR *et al.,*—(GUARANTY BANK & TRUST COMPANY, Appellant.)

*Opinion filed January 20, 1961.—Rehearing denied March 27, 1961.*

McCarthy and Levin, of Chicago, (John F. Mc-
Carthy, Esther R. Rothstein, and James H. Handler,
of counsel,) for appellant.

Robert A. Snow, and Joseph S. Smuda, both of Chi-
cago, (William E. Brekke, of counsel,) for appellee.

Mr. Justice Solfisburg delivered the opinion of the
court:

The Chicago Housing Authority, on September 23, 1959,
filed suit under the Eminent Domain Act (Ill. Rev. Stat.
1957, chap. 47), to condemn 32 parcels of land on the near
south side of Chicago for development and erection of a
low-rent housing project. The petition included parcel 80,
known as 4008 South Federal Street, Chicago, and named as
defendants the owner of record, the Southmoor Bank and
Trust Company (now Guaranty Bank & Trust Company),
as trustee, and persons otherwise interested, among them
Charles J. Anderson and Hattie Lee Anderson. On March
25, 1960, the day set for trial, defendant trust company,
appellant herein, filed a motion for leave to file a petition,
the contents of which will hereinafter be detailed. This
motion was denied, testimony presented, and a jury verdict
entered in the sum of $1,000. From this judgment the trust
company, hereinafter called defendant, appeals.

The defendant's contention is that, on the basis of the
allegations of its petition, either it has a valid claim for dam-
ages against plaintiff, which it may assert by a petition filed
in the condemnation proceedings, or it is entitled to have just
compensation for the taking of its property fixed, not as of
September 23, 1959 (the date of filing the petition to con-
demn) but as of November 7, 1958, the date defendant con-
tends a verbal agreement for voluntary conveyance was

made for the sum of $3,250. Plaintiff's theory is that the defendant's petition was not cognizable in an eminent domain proceeding and did not set forth a valid claim for damages.

The petition, which the court refused leave to file, states in substance, after allegations of ownership of the described property, that the premises are in an area of Chicago where premises, when they become vacant, have been vandalized and stripped of materials of value. It states that plaintiff knew this fact of vandalism; that the property had been sold on a real-estate installment contract dated March 30, 1957, to the Andersons, for $6,900, payable $75 down and $75 per month; that on November 11, 1958, the Andersons moved and the premises were vandalized and certain fixtures, equipment, wiring and piping removed by persons unknown; that thereafter those premises could not be used for any purpose and the fair cash market value decreased substantially. The petition also recited that on November 7, 1958, before the vandalism, the parties verbally agreed that petitioner would voluntarily convey the premises to plaintiff for $3,250; that an executed written offer was returned to plaintiff on November 10, 1958; that on November 12, 1958, the plaintiff sent a letter cancelling the offer previously sent, with the advice that an inspection of the property showed that it had been vacated and vandalized. The petition further alleges that the proximate cause of the Andersons moving, the vandalism, and substantial diminution of the fair cash market was the activities of the plaintiff. Said activities were said to include a letter dated in August, 1956, from the Authority to the property owners advising them of the Chicago city council action on May 9, 1956, approving the acquisition; necessity for surveys, appraisal valuations, and title searches; the desire to pay the full fair cash market value for the properties, and future negotiations. Finally, it is alleged that these activities started three years before plaintiff filed suit herein, buildings became vacant and vanda-

lized, some buildings were acquired and demolished, the neighborhood became frequented with undesirable individuals, and it was difficult to find occupants at any rental with the result that the property valued at $4,500 in August, 1956, had a value of $3,250 in November 7, 1958.

The prayer of the petition is that the court find that plaintiff took the premises on November 7, 1958, and award petitioner just compensation as of that date, or, in the alternative, that the court require plaintiff to pay all damages naturally and proximately resulting from the facts and circumstances described, including the difference between the fair cash market value on or immediately prior to November 10, 1958, and on September 23, 1959, the date of the filing of this proceeding.

We shall first consider the question whether defendant's petition set forth a valid claim for damages. This question is considered separate and apart from the question presented by the alternative prayer of the petition, namely, whether a date other than the date of filing of the petition for condemnation can be used as the date on which the fair cash market value of the property is to be determined. Defendant cites section 13 of article II of the constitution of Illinois, 1870, which provides that "Private property shall not be taken or damaged for public use without just compensation" as authority for receiving compensation for damage to, or disturbance of or interference with its rights in its property.

No Illinois cases have been cited which involve facts similar to those alleged in the defendant's petition. All of the damage alleged in the instant petition is claimed as a result of incidental activities of the condemning authority prior to the filing of the petition to condemn.

It is a well-recognized proposition of law that land is not damaged by reason of preliminary procedure looking to its appropriation to a public use. (*Eckhoff* v. *Forest Preserve District,* 377 Ill. 208, 214; *City of Chicago* v. *Lederer,* 274 Ill. 584.) Under the constitution of 1870, we have awarded

compensation in cases involving a partial taking of property and also in cases where no property was actually taken. In many Illinois cases, we have allowed compensation for damages to a remainder of the property. These cases always involve the actual taking of a part of the property and an actual, but not speculative or conjectural, damage to the remainder of the property. There is still another class of cases which involve an action at law where a bridge or other public improvement was constructed nearby with a resulting direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special damage. (*Rigney* v. *City of Chicago,* 102 Ill. 64; *Kane* v. *City of Chicago,* 392 Ill. 172; *Cuneo* v. *City of Chicago,* 379 Ill. 488; *Chicago Southern Railway Co.* v. *Nolin,* 221 Ill. 367; *Indiana, Illinois and Iowa Railroad Co.* v. *Stauber,* 185 Ill. 9; *Rock Island and Eastern Illinois Railway Co.* v. *Gordon,* 184 Ill. 456). Defendant claims that the cases involving damages to a remainder of a property and the cases cited above pertaining to bridges and railroads involve the application of legal principles similar and analogous to those presented in the instant case. With this we do not agree. All of the cases relied upon by defendant involve damages resulting from a taking by condemnation or a construction of a public project which occurred at the same time or prior to the injuries complained of.

A re-examination of the facts alleged in defendant's petition conclusively reveals that all of the acts complained of occurred prior to the filing of the condemnation petition. The fact that at some future time a public body, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State. Entering into negotiations, and filing of a petition to condemn, vests no interest in land. (*VanWinkle* v. *Loehde,* 336 Ill. 327; *City of Chicago* v. *Ridge Park District,* 317 Ill. 123; *Forest Preserve District* v. *Kean,* 303 Ill. 293.) In *City of Chicago* v. *Lederer,* 274 Ill. 584, it was

held that the jury was not entitled to consider evidence as to the value of a tract to be taken on the supposition that the value was menaced by an ordinance authorizing condemnation. We further held in *Lederer* that the property belongs absolutely to the original owners with full right to use it or build upon it for any purposes they might see fit, up to the time of filing of the petition, notwithstanding the ordinance. In the case of *Eckhoff* v. *Forest Preserve District,* 377 Ill. 208, 212, it is stated that "this constitutional provision [section 13 of article II of the constitution of 1870] is not intended to reach every possible injury that might be occasioned by a public improvement. Certain injuries are necessarily incident to the ownership of property within a municipality possessing the power of eminent domain, which may indirectly impair its value but for which the law does not and never has afforded relief." We think the *Eckhoff case* is especially in point. The property owner there claimed damages for a diminution of value caused by 13 years delay between the declaration of the necessity of taking the land, serving of notices, and negotiations for purchase, and the actual filing of the condemnation petition. We held that the property owner was not entitled to compensation for alleged damages caused by such delay, and said at p. 214: "It seems obvious that the taking or damaging of land by eminent domain is not accomplished by passing resolutions or ordinances, nor by negotiating with the owner for the purchase of it, or serving notices upon him that the land may be required for public purpose. The series of corporate actions by the appellee district, complained of, cannot be said to have had the same effect upon their land as the filing of a condemnation petition. Such could not, in any sense, be held to be the taking of land or damaging of land not taken. The fact that at some future time a municipal corporation, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State."

We have scrutinized each and every allegation of damage in the defendant's petition and conclude that they are the type of damage for which the law does not afford relief.

As to the alternative prayer, under the facts alleged in defendant's petition, that the court find that plaintiff took the premises on November 7, 1958, and award just compensation as of that date, in the amount of $3,500, it is noted that this is the date that plaintiff allegedly sent to defendant for execution a form of written offer to sell the premises for $3250. Although the offer was executed and returned to plaintiff on November 10, it was rejected by plaintiff after inspection revealed the property had been vacated and vandalized.

Defendant points out that there is no statutory requirement for determining compensation as of the date of the filing of the petition or statutory prohibition against fixing it as of another appropriate date. Defendant concedes that the decisions of this court have recognized that compensation is normally ascertained as of the date of the filing of the petition, but contends that the circumstances here require it to be determined as of another date, namely, November 7, 1958. Defendant cites *Illinois Cities Water Co.* v. *City of Mt. Vernon,* 11 Ill.2d 547, as authority for fixing a date different from the date of the filing of the petition. However, a careful reading of the *Mt. Vernon* opinion reveals that certain additions and improvements of the waterworks property (the property being taken) were necessarily made in good faith subsequent to the filing of the petition in accordance with its operating authority. The court in that case was of the opinion that, under those circumstances, the eminent domain statute provided a constitutional and lawful means by which the so-called "after acquired property" may be valued. That case, and all others cited by defendant are distinguished from the circumstance of the instant case. Defendant cites no Illinois case and we find none which

authorize fixing a date of taking at a time prior to the filing of the petition for condemnation.

Our conclusion is that defendant's petition does not state a cause of action. As the petition does not state a cause of action, it is not necessary, for the purpose of this opinion, to decide whether or not the provisions of the Civil Practice Act authorize the filing of such a petition in a condemnation proceeding.

The trial court did not err in denying defendant leave to file its petition. The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*