656

THE STATE OF WASHINGTON, *Appellant*, v. CLARENCE B. SHAIN
et al., *Defendants*, TYNE MARIE CHRISTMAN,
*Respondent*.

*Slade Gorton, Attorney General, Joseph B. Loonam, John
E. Lamp*, and *Robert V. Jensen, Assistants*, for appellant.

*Merges, Brain & Hilyer* and *G. Robert Brain*, for respondent.

GREEN, J.—Appellant, State of Washington, appeals from
a judgment in favor of Tyne Marie Christman, respondent,
for damages arising from the state's initiation and later
dismissal of a condemnation proceeding.

Viewing the facts in the light most favorable to Mrs.
Christman, the record shows the state determined to construct a 4-lane highway from Lake Keechelus in the Hyak

area to the summit of Snoqualmie Pass. Mrs. Christman was purchasing certain real property on contract from Clarence B. Shain and his wife. A portion of this property was to be acquired for the proposed new highway. Coal Creek crossed the area.

In the fall of 1965, Murray Duncan, right-of-way agent for the state, discussed with Mrs. Christman the acquisition of the property, including relocation of Coal Creek. Mr. Duncan suggested the creek be relocated to a point immediately adjacent to the property to be acquired; whereas, Mrs. Christman wanted to move the creek further away thus rendering her remaining property more useful. The cost of relocating the creek to a point adjacent to the property to be acquired was agreed to be $4,751.05. Any increased cost of relocation to the point desired by Mrs. Christman was to be borne by her. Thereupon, the state, acting through Mr. Duncan, prepared and signed a voucher and escrow agreement, the latter being also signed by Mrs. Christman, providing for delivery of the escrow agreement and voucher for $4,751.05 to a title insurance company. The money was to be held by the title company, with $1,500 to be disbursed to the contractor at commencement of construction and the remainder paid upon completion. Mrs. Christman's contractor completed the excavation for the channel change; but, the state refused to perform or make any payment to the escrow holder.

Mrs. Christman, the state, and Mr. Shain could not agree upon the amount to be paid for the property. The state then served notice of condemnation; on September 30, 1966, an order adjudicating public use was entered. Negotiations thereafter continued without success. On November 3, 1967, the state decided not to acquire Mrs. Christman's property and filed a motion for dismissal of the proceeding. When the motion was argued, counsel for Mrs. Christman informed the court of her claim for damages arising from the cost incurred in excavating the new creek bed in reliance upon the escrow agreement and discussions with Mr. Duncan as to the relocation of Coal Creek. On November 9,

1967, an order of dismissal was entered; but the court orally reserved jurisdiction to hear Mrs. Christman's claim for damages by jury trial. On the day of trial, the state filed a motion, together with memorandum of authorities, challenging the jurisdiction of the Superior Court of Kittitas County, asserting that any claim Mrs. Christman had against the state could only be brought in Thurston County under RCW 4.92.010. The matter was continued and Mrs. Christman was allowed to submit additional authorities. Thereafter, the state's jurisdictional challenge was denied. A jury trial resulted in a verdict for Mrs. Christman in the sum of $17,100.

Many of the facts outlined above were put in issue by the state. For example, Mr. Duncan claimed he told Mrs. Christman the escrow agreement had to be approved by his department in Olympia as well as by the Shains. Mrs. Christman denied this claim. The document itself did not require any further signatures or approvals. These disputed facts were resolved by the jury in favor of Mrs. Christman and will not be disturbed on appeal.

First, the state contends the Superior Court for Kittitas County lacked jurisdiction over the subject matter of the present action. It relies upon RCW 4.92.010:

> Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county.

The state cites numerous cases annotated under this statute. However, in each of these cases the plaintiff initiated the action against the state and the provisions of RCW 4.92.010 were strictly applied.

The instant case is different. Here the state properly brought the condemnation action in Kittitas County where the real property was located. RCW 8.04.010. The expenditure of moneys to relocate Coal Creek was made based upon negotiations for the state's acquisition of the property by direct purchase or condemnation and the

signed document providing for contribution by the state towards the cost of relocating the creek.

With the state's knowledge and written consent, the creek bed was in fact relocated. In its new location, the creek was to flow off the Christman property onto adjacent property also being condemned by the state; a dismissal of the condemnation would leave the relocated creek without drainage. These facts were known to the state when it elected to dismiss the condemnation proceeding. The damage claim arose prior to the dismissal; it was intimately related to, directly involved in, and the proximate result of the negotiations that culminated in the condemnation proceeding. Under these circumstances, the state's contention that Mrs. Christman must file her damage claim in Thurston County cannot be sustained.

In *Whitener v. State,* 75 Wn.2d 332, 450 P.2d 964 (1969), where a plaintiff sued in Grant County to quiet title to land previously involved in a condemnation proceeding and to collect damages, the state admitted there was jurisdiction over the quiet title action under RCW 4.92.010 but claimed there was no jurisdiction over the damage claim. It contended the damage claim had to be filed in Thurston County. In rejecting this contention, the court said at page 337:

> The second element of damages resulting from nonperformance of a condition subsequent in the decree was incident to and arose out of the same transaction which gave rise to the action to quiet title. It was not the legislature's intention in fixing the forum in which the state may be sued to require a citizen to commence a quiet title action in the county in which the land is situated and to require him to institute another action in Thurston County to recover damages arising incident to the quiet title action.

Likewise, in the instant case, we do not believe the legislature intended to permit the state to bring a condemnation action in Kittitas County, cause damage to respondent, dismiss its action, and then compel Mrs. Christman to institute a new action for damages in Thurston County. As the court

said in *Silver Surprize, Inc. v. Sunshine Mining Co.,* 74 Wn.2d 519, 445 P.2d 334 (1968) at 523:

> Jurisdiction is not a light bulb which can be turned off or on during the course of the trial. Once a court acquires jurisdiction over an action it retains jurisdiction over that action throughout the proceeding. "Consent cannot confer jurisdiction of subject matter." Brown, Jurisdiction § 3 p. 15 (2d ed. 1901). Neither can the defendant by his answer destroy the jurisdiction of the court once attained. [Citing cases.] If the converse of this were true, it would be within the power of the defendant to preserve or destroy jurisdiction of the court at his own whim.

In the same manner, the state properly brought an action in Kittitas County; the trial court acquired jurisdiction of that action and all matters arising therefrom. Under these circumstances the state cannot destroy the trial court's jurisdiction by withdrawing its action.

■ Second, the state contends the court erred in excluding testimony as to the fair market value of the property before and after relocation of the creek. It is the state's position that valuation testimony by its experts would have shown an increase in the value of the property over and above the cost of creek relocation. (Apparently property values were on the increase in the area.) Mrs. Christman testified the relocated creek bed was of no value because the adjacent downstream property owner refused to grant her a flowage easement. As a result, the relocated creek bed was not usable. This testimony was uncontroverted. While damage to real property is ordinarily measured either by the difference in fair market value before and after the damage or the cost of restoring it to its original condition, *Harkoff v. Whatcom County,* 40 Wn.2d 147, 241 P.2d 932 (1952), such rule does not apply to this case. Mrs. Christman spent money in reliance upon her discussions and signed document with agents of the state and their completing the total acquisition by direct purchase or condemnation. The state's dismissal of the condemnation left her with the needlessly incurred expense of a relocated creek

bed that was of no use. In these circumstances, the only fair measure of damage was to compensate her for those expenses. The trial court correctly refused to allow expert testimony on valuation since it was immaterial. It also properly refused to give the state's proposed damage instruction as contained in assignment of error No. 9. The court properly gave instructions No. 3, 4 and 5, allowing the jury to compensate Mrs. Christman for expenses incurred in relocating the creek bed. The verdict coincided with the precise cost of relocation testified to by Mrs. Christman's contractor.

With respect to instructions No. 3 and 5, the state also claims error in instructing the jury that the state is liable for any damages proximately caused by notifying Mrs. Christman of their intention to condemn the property. It is argued that *mere* notice of intention to condemn does not constitute a compensable damage. *Chicago Housing Authority v. Lamar*, 21 Ill. 2d 362, 172 N.E.2d 790 (1961); *Stafford v. People ex rel. Department of Pub. Works*, 144 Cal. App. 2d 79, 300 P.2d 231 (1956); *Hamer v. State Highway Comm'n*, 304 S.W.2d 869 (Mo. 1957); 6 Nichols, *Eminent Domain* § 26.45. These cases are not apposite. The instant case involves more than a *mere* notice; it involves a chain of negotiations, signed documents, reliance and action thereon by the condemnee with knowledge of the state to her detriment. The state's contention is without merit.

Third, it is asserted the court abused its discretion in awarding attorney fees to Mrs. Christman on the ground of excessiveness. RCW 8.25.030 provides:

> If a condemnor, after entry of an order of public use and necessity in any eminent domain proceeding, shall ifail to proceed to acquire the property or abandons the proceeding, the court *may in its discretion* award to the condemnee a reasonable sum as attorneys' fees and expert witnesses' fees.

(Italics ours.) The trial court awarded Mrs. Christman $3,208 as reasonable attorney fees. Our review of the record fails to disclose any abuse of discretion in the award.

Fourth, the state claims the court committed error in the giving of the issues instruction and in failing to give the state's proposed issues instruction. Considering the instructions given as a whole, we find the claimed error to be without merit.

Last, the state contends the trial court abused its discretion in permitting Mrs. Christman, on rebuttal, to present evidence as to her planned use of the property prior to condemnation. It is claimed such evidence was new evidence and beyond a mere answer to the state's case, and therefore not proper rebuttal. We do not agree. The state contended throughout the trial that Mrs. Christman was planning to relocate the creek bed prior to the condemnation and that she would have done so in any event; hence, she suffered no damage. Mrs. Christman's testimony and the evidence presented as to the planned use of the property was proper rebuttal for the purpose of negating the state's contentions. This was the effect of the evidence. Consequently, there was no abuse of discretion in admitting such testimony.

Judgment affirmed.

EVANS, C. J., and MUNSON, J., concur.