THE CITY OF CHICAGO, Counterdefendant-Appellee, *v.* CHARLES LOITZ *et al.*, Counterplaintiffs-Appellants.

(No. 56462; )

First District (1st Division)—April 2, 1973.

Jerome H. Torshen, Ltd., of Chicago, (Jerome H. Torshen and Robert F. Berrey, of counsel,) for appellants.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Richard F. Friedman, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This record brings before us an appeal by Charles Loitz, Murray Loitz and Freida Loitz (counterplaintiffs) from an order granting the motion of City of Chicago (plaintiff and counterdefendant) to dismiss their second amended counterclaim.

■■ We will first state the substance of the second amended counterclaim, the well-pleaded facts of which are admitted by the motion to dismiss. *Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill.2d 93, 96, 187 N.E.2d 722.

Counterplaintiffs own real estate in the City of Chicago upon which they operated a gasoline station. On July 11, 1966, the City Council of Chicago adopted an ordinance for realignment and reconstruction of certain streets in the area of counterplaintiffs' property. The Commissioner of Public Works was authorized to acquire four parcels of property to accomplish this, including that of counterplaintiffs. Three of these parcels were actually acquired by the City or condemnation proceedings were filed against them.

On December 23, 1966, the Commissioner of Public Works wrote a letter to counterplaintiffs advising that the City had directed acquisition of their real estate. An offer of $70,000 for the property was made. The letter also stated that unless counterplaintiffs replied within ten days the Commissioner would assume that the offer had been rejected and that condemnation proceedings would be instituted.

Promptly upon receipt of this offer, counterplaintiffs entered into negotiations with the City. On or about March 7, 1967, the City made

an offer to purchase the property for $82,000. On March 7, 1967, legal counsel for counterplaintiffs wrote to the City Bureau of Engineering and accepted the offer of $82,000 for the premises, including equipment and fixtures attached thereto. At or about the time of these negotiations, counterplaintiffs were in the process of dealing with their gasoline supplier in an effort to obtain funds to remodel their gasoline station. The steps being taken by the City in connection with its intention to acquire the property of counterplaintiffs by condemnation or purchase were matters of common knowledge among landowners, tenants, businessmen and realtors in the area. In view of the pendency of the sale, the gasoline supplier for counterplaintiffs cut off their supplies and refused to furnish funds. Subsequently the City abandoned its project and failed and refused to consummate the transaction with counterplaintiffs. These acts of the City caused the destruction of the business of counterplaintiffs, caused their property to become unoccupied and unsalable and resulted in destruction of the improvements on the property by vandals. Although not specifically alleged, it is agreed that condemnation proceedings were never filed by the City.

The second amended counterclaim further alleged that these acts constituted a taking of counterplaintiffs' property, which was valued at $83,500, and that the City had failed and refused to give counterplaintiffs just compensation as required by section 13 of article II of the Constitution of Illinois and amendments V and XIV of the Constitution of the United States. The City filed a motion to dismiss the second amended counterclaim for failure to state a cause of action. This motion was granted by the trial court. A motion made by counterplaintiffs to reconsider this order was denied.

It is counterplaintiffs' theory and contention that their property was actually taken by the City despite the fact that proceedings for condemnation were never filed. They urge that the City, by its actions, deprived them of their interests in the property, which is legally tantamount to a taking by the municipality. The City urges that a property owner has no cause of action for damage to property caused by preliminary activities prior to the filing of an action for condemnation. As an additional ground, the City urges that the second amended counterclaim was properly dismissed because of failure of counterplaintiffs to serve notice upon the City pursuant to the Local Governmental and Governmental Employees Tort Immunity Act. Ill. Rev. Stat. 1965, ch. 85, sec. 8—101—102—103.

We are thus presented with an issue of law as to whether the

above allegations are sufficient to constitute the taking of property by the municipality without just compensation in violation of Illinois and Federal Constitutions. We have concluded and accordingly hold that the law of Illinois, in agreement with the weight of authority in other states and in the Federal courts, is that mere planning by a governmental body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this, without the filing of proceedings and without physical taking or actual invasion of the real estate, is not actionable by the owner of the land as being in contravention of Illinois and Federal Constitutions. A recent annotation appearing in the American Law Reports sets forth this rule and lists in detail the citation of cases dealing with this question. Annotation of *Hilltop Properties v. State*, 233 Cal.App.2d 349, appearing in 37 A.L.R.3d 109, 132, 133, 134.

The law of Illinois is contained in two decisions of our Supreme Court. In *Eckhoff v. Forest Preserve Dist.*, 377 Ill. 208, 36 N.E.2d 245, plaintiff sought to recover compensation for damages to land not taken on the theory that the District had engaged in needless and vexatious delay. Various notices of proposed taking of the property had been served from 1925 until proceedings were actually filed in 1938. Damages were claimed for alleged violation of the State and Federal constitutions. The Supreme Court affirmed denial of this claim using the following language (377 Ill. at page 214):

> "It seems obvious that the taking or damaging of land by eminent domain is not accomplished by passing resolutions or ordinances, nor by negotiating with the owner for the purchase of it, or serving notices upon him that the land may be required for public purpose. The series of corporate actions by the appellee district, complained of, cannot be said to have had the same effect upon their land as the filing of a condemnation petition. Such could not, in any sense, be held to be the taking of land or damaging of land not taken. The fact that at some future time a municipal corporation, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State. Entering into negotiations for the purchase, and filing of a petition to condemn, vests no interest in land."

The same rule was followed in *Chicago Housing Authority v. Lamar*, 21 Ill.2d 362, 172 N.E.2d 790. The landowner there claimed that he was entitled to compensation for the taking of his property fixed as of the date that a verbal agreement for voluntary conveyance was entered into.

As in the case at bar, the owner alleged that the premises had become vacant and subjected to vandalism after the agreement. The Supreme Court held (21 Ill.2d at page 365):

> "It is a well-recognized proposition of law that land is not damaged by reason of preliminary procedure looking to its appropriation to a public use. (*Eckhoff v. Forest Preserve District*, 377 Ill. 208, 214; *City of Chicago v. Lederer*, 274 Ill. 584.)"

The court further expressly approved the basic theory of *Eckhoff* as above set forth. (See 21 Ill.2d at page 367.) It is true that *Chicago Housing Authority v. Lamar* is decided on the basis of Illinois law without mention of the United States Constitution. But, *Eckhoff* considered both constitutions. It should also be noted that amendment XIV of the United States Constitution provides simply that no person shall be deprived of his property without due process of law. Amendment V, closer to the case at bar, provides that private property shall not be taken for public use without just compensation. The organic law of Illinois seems to go even beyond these pronouncements. The Illinois Constitution of 1870, article II, section 13, provides that "private property shall not be taken or damaged for public use without just compensation." The Illinois Constitution of 1970, article I, section 15, provides that "private property shall not be taken or damaged for public use without just compensation as provided by law."

In rather similar situations, the United States Supreme Court has reached the same conclusion as the Supreme Court of Illinois. (See *United States v. Sponenbarger*, 308 U.S. 256, 84 L.Ed. 230, 60 S.Ct. 225 and *Danforth v. United States*, 308 U.S. 271, 84 L.Ed. 240, 60 S.Ct. 231.) The majority rule seems supported by logic and reason and by a broad general policy of assisting the growth and expansion of municipalities. As set forth in the annotation above cited (37 A.L.R.3d at page 139) the service of notices or the initiation of negotiations between the governmental agency and the landowner do not in themselves constitute a physical taking or the infliction of damage upon the property. These preliminary matters do not in any physical sense invade the property or infringe upon the possessory rights of the owner. In fact, practical considerations may compel abandonment of the proposed taking without damage to the property. In addition, as pointed out by the Supreme Court of Illinois, every landowner should be aware of the fact that his title and possession of the land are always necessarily subject to the power of eminent domain which may be exercised by the sovereign. *Eckhoff v. Forest Preserve Dist.*, 377 Ill. at page 214.

The cases cited and depended upon by plaintiffs are distinguishable.

They are either from jurisdictions which adhere to the minority rule, such as *In re Elmwood Park Project Section 1, Group B,* 376 Mich. 311, 136 N.W.2d 896; from Federal courts in states which adhere to the minority rule such as *Foster v. City of Detroit,* 254 F. Supp. 655, arising in the Eastern District of Michigan; *Sayre v. United States,* 282 F. Supp. 175, arising in the Northern District of Ohio and *Haczela v. City of Bridgeport,* 299 F.Supp. 709, from the United States District Court in Connecticut; or they were decided by the United States Court of Claims, such as *R. J. Widen Co. v. United States,* 357 F.2d 988 and *Drakes Bay Land Co. v. United States,* 424 F.2d 574.

■■ Counterplaintiffs also cite *Kaufman and Broad Homes, Inc. v. City of Chicago,* decided in the United States District Court for the Northern District of Illinois, Eastern Division, on September 24, 1970, and apparently unreported. The court there denied a motion to dismiss a complaint against the City on the ground that it failed to state a claim against the taking authority. There, however, unlike the case at bar, condemnation proceedings were actually commenced in the circuit court of Cook County although subsequently abandoned. The United States District Court held that this was an actionable taking. This was done upon the authority of decisions adhering to the minority rule by the United States District Court for Connecticut (*Haczela v. City of Bridgeport,* 29 F.Supp. 709), and the United States District Court for the Northern District of Ohio. (*Sayre v. United States,* 282 F.Supp. 175.) In addition, the courts of Illinois are not actually bound by decisions of Federal courts other than the United States Supreme Court. This is the only court which has appellate jurisdiction over Federal questions arising in the courts of Illinois. Decisions of all United States courts other than the Supreme Court, therefore, have only advisory effect upon the decisions of this court and require our "respectful consideration." (*People v. Battiste,* 133 Ill.App.2d 62, 272 N.E.2d 808, citing *United States ex rel. Lawrence v. Woods,* 432 F.2d 1072.) We will follow the law as expressed by the Supreme Court of Illinois, the majority of state courts and the United States Supreme Court.

In view of the foregoing we need not consider the additional point raised by the City pertaining to the Tort Immunity Act.

The amended counterclaim failed to state a cause of action. It was properly dismissed.

Judgment affirmed.

BURKE, P. J., and EGAN, J., concur.