Ellen Florence, Plaintiff-Appellant, v. The Travelers Insurance Co. and the Baltimore and Ohio Chicago Terminal Railroad Co., Defendants-Appellees.

Gen. No. 49,978.

First District, First Division.

May 24, 1965.

Henry W. Kenoe and Raphael Fine, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz and Masters, of Chicago (David Jacker and John W. Kearns, of counsel), for the Travelers Insurance Co., appellee; John H. Gabel and Nicholas E. Liontakis, of Chicago, for the Baltimore and Ohio Chicago Terminal Railroad Co., appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, under a Group Insurance Policy Contract which covered her deceased husband, seeks to collect a $4,000 death benefit. In the alternative, plaintiff seeks damages "occasioned by alleged negligence of defendants in advising the insured with respect to the disa-

bility premium waiver provisions of the contract." Summary judgment orders were entered in favor of defendants, and plaintiff appeals.

The orders appealed from were entered on plaintiff's verified amended statement of claim, Travelers' verified answer, interrogatories, affidavits and counteraffidavits, and supporting exhibits.

Jessie Florence, plaintiff's deceased husband, was employed by defendant Baltimore & Ohio Chicago Terminal Railroad Company. During his active employment by the B. & O., he came within the provisions of "Group Policy Contract No. GA 23000," in which defendant, The Travelers Insurance Company, is the "Insurer," and signatory "Employers and Brotherhoods collectively" constitute the "Policyholder." The policy provided benefits for "qualified" railroad employees and their dependents. The employees do not pay the premiums under the policy. The premiums for such insurance are paid by the participating railroad employers under procedures outlined in the policy.

Six Articles set forth three basic types of benefits for "qualified employees" and the separate "eligibility" requirements applicable to each type of benefit. In each instance, the Article defining the benefit is immediately preceded by an Article prescribing the specific "eligibility" requirement which applies to the particular benefit set forth in the Article which follows it. Article VI defines "Eligibility for Employee Benefits Described in Article VII." Article VII contains the employees' hospital and surgical benefits. Article VIII defines "Eligibility for Dependents' Benefits Described in Article IX." Article IX contains the dependents' hospital, surgical and other medical benefits. Article X defines "Eligibility for Life Insurance Benefits" and Article XI contains the $4,000 life in-

472

surance benefits. The portions of the "Articles" we are concerned with are as follows.

Article VIII, paragraph 1, reads, in relevant part:

"1. An Employee . . . shall be insured for Dependents Benefits as provided in Article IX hereof during and only during the month following a month for which the signatory Employer by which he is employed is required to make the appropriate payment to the Insurer . . . except that: (i) such payment shall be waived and insurance shall be continued in subsequent consecutive months when the requirements set forth in Paragraph 1 of said Article V cannot be met solely as a result of the Employee's disability which prevents him from performing work in his regular occupation; . . . *provided,* however, that . . . (b) *no* Employee shall be insured after the date on which his employment relationship is terminated other than for retirement, or *after the date the Employee has failed to render compensated service for a period of One calendar year. . . .*" (Emphasis supplied.)

Article X of the policy prescribes the requirement for "Eligibility for Life Insurance Benefits," and reads, in relevant part:

"Each Employee . . . shall be insured for an amount of life insurance, determined in accordance with Article XI, *during and only during* the period that he is insured in accordance with Article VIII, Paragraph 1 of this policy contract; provided, however, . . . (b) that such life insurance *shall in no event* continue in force after the date the Employee has failed to render compensated service for a period of one calendar year." (Emphasis supplied.)

473

Article XI provides for $4,000 Life Insurance Benefits and contains a "conversion privilege," as follows:

"Section 3. Conversion Privilege. In case of the termination of any life insurance under this policy contract at the expiration of the period specified in Article X above for any reason other than discontinuance or amendment of this policy contract, the Employee shall be entitled to have issued to him by the Insurer without evidence of insurability, and upon application made to the Insurer within Thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, an individual policy of life insurance without disability or other supplementary benefits, in any One of the forms then customarily issued by the Insurer, except term insurance, in an amount not in excess of the amount of such terminated insurance, less, in the case of an Employee who continues in employment with an Employer included under this policy contract, any amount of life insurance for which such Employee may be or may become eligible under any other group policy within Thirty-one days after the date of such termination and less any amount of life insurance in force under any individual policy previously issued to the Employee in accordance with the conversion privilege of this policy contract."

The active employment of Jessie Florence by the B. & O. ended on May 12, 1960, when he was disabled, and this was the final date upon which he "rendered compensated services" for his employer. He retired on April 11, 1961, and he died on May 11, 1962. Upon

474

the refusal of Travelers to pay the amount allegedly due to plaintiff as beneficiary under the policy, plaintiff filed her statement of claim on January 11, 1963.

Count I of the amended statement of claim alleged the existence of a cause of action for $4,000 against Travelers for death benefits under the life insurance provisions of Group Policy GA 23000. It alleged that Travelers, without reasonable cause, had refused to pay the amount due under the policy, although the cause of the insured's death was one insured against in the policy, the plaintiff was the sole beneficiary of the policy, plaintiff and the insured had performed all the conditions prescribed by the policy, and the policy was in full force and effect at the time of the death of the insured.

Count II alleged the existence of a cause of action against both defendants. It alleged that on or about the time of insured's retirement, April 11, 1961, insured was disabled and entitled to disability premium waiver pursuant to the contract of insurance. At that time, it is alleged, the defendants, by their agents and servants, "carelessly, negligently and without regard to the consequences to said Jessie Florence and his beneficiary, advised, informed and represented to said Jessie Florence that pursuant to the terms of said disability premium waiver provision he was fully insured under said contract of insurance without further payment of premiums until the expiration of the calendar year 1962." It is further alleged that "by reason of said advice . . . and relying thereon . . . Jessie Florence paid no premiums in consideration of said insurance from the time of his said retirement until the time of his death . . . . Had said Jessie Florence been correctly advised he would have paid any premiums which might have fallen due upon said contract of insurance so as to remain insured until his death."

Count II contained a prayer for judgment of $4,000, and costs, as the damage suffered by plaintiff by reason of defendants' negligence.

As to Count I, alleging a cause of action against defendant Travelers for recovery of death benefits on the group insurance policy, we believe that the provisos of both Article X and Article VIII, paragraph 1, are determinative. Both provisos limit the length of time which insurance benefits continue in force. Article X states:

> "[P]rovided, however, . . . that such life insurance shall in no event continue in force after the date the Employee has failed to render compensated service for a period of one calendar year."

In similar terms, Article VIII, paragraph 1, states:

> "[P]rovided, however, that . . . no Employee shall be insured after the date on which his employment relationship is terminated other than for retirement, or after the date the Employee has failed to render compensated service for a period of One calendar year . . . ."

The date on which Jessie Florence, the alleged insured, last rendered compensated service to the B. & O. was May 12, 1960. Assuming that he was a "qualified employee," his life insurance benefits continued in force for one calendar year after this date, that is, until December 31, 1961. As Jessie Florence died on May 11, 1962, more than one calendar year after the last date he rendered compensated service, under the unambiguous limitations of the group policy quoted above, he was not eligible to receive life insurance benefits at the time of his death. Therefore, under facts which are not controverted, the summary judgment entered by the trial court in favor of Travelers

476

and against Jessie Florence's "beneficiary" on Count I was proper.

As to Count II, as finally amended, plaintiff contends that summary judgment should not have been granted against her because the pleadings and affidavits raised a factual issue as to whether defendants advised Jessie Florence with respect to the disability waiver provision. Cannon v. Thompson, 33 Ill App2d 233, 237, 179 NE2d 37 (1961).

In plaintiff's affidavit in opposition to Travelers' motion for summary judgment, plaintiff states that "[w]ithin one or two days after the retirement of my deceased husband, Jessie Florence, on April 11, 1961, he was advised by an employee of defendants that pursuant to the terms of certain disability premium waiver provisions in the policy of group life insurance . . . Jessie Florence was fully insured under said contract of insurance without further payment of premiums until the expiration of the calendar year 1962. . . . As evidence of said advice said employee wrote upon a certain notice to furloughed or retired employees, a true copy of which is attached hereto and made a part hereof as Exhibit 'A,' the legend: 'Pre waiver until Dec. 1961 for wife and Dec. 1962 for both.'" In response to Travelers' interrogatories concerning the advice defendants allegedly gave to Jessie Florence, the plaintiff replied: "I do not know the names or addresses of anyone who was present at the insurance offices of defendants where the occurrence took place."

Plaintiff sent amended written interrogatories to both defendants, which included the following:

"3. State whether the legend 'Pre waiver until Dec. 1961 for wife and Dec. 1962 for both' appearing on the attached 'Notice to Furloughed or Retired Employees' is in the handwriting of any of the persons . . . [employed in offices of defend-

ants involved in servicing group insurance coverage of employees of the B. & O.] or of any other employee or agent of defendants, or either of them, and if so, identify this employee or agent and state his or her address.

"4. If lack of knowledge is claimed in the answer to the preceding interrogatory, state what efforts have been made by defendants, or either of them, to ascertain the answer to said interrogatory."

Defendant Travelers answered "No" to the third interrogatory, and to the fourth interrogatory answered "We showed the piece of paper to the above employees and none of them said that it was in their handwriting." Defendant B. & O. answered interrogatory 3, as slightly modified by the court, by stating, "It is not in the handwriting of any of the persons [employed in the accounting department] previously named . . . . This entire answer is based upon my familiarity with the handwriting of our office staff or of my inquiring of all the above-named . . . ." The B. & O. answered interrogatory 4 by stating, "Not applicable."

In an affidavit attached to Travelers' motion for summary judgment, Raymond P. Georgen, the "duly authorized agent of The Travelers Insurance Company," deposed that "The Travelers Insurance Company has at no time advised Jessie Florence as to any rights he may or may not have had with respect to the life benefits under Group Policy GA-23000." In an affidavit attached to defendant B. & O.'s motion for summary judgment, filed March 25, 1964, G. E. Swart, "duly authorized agent" and "Chief Clerk" of the B. & O., deposed, with personal knowledge, that "[t]he Baltimore and Ohio Chicago Terminal Railroad Company has at no time advised Jessie Florence as to any rights he may or may not have had with respect to the life benefits under Group Policy GA 23000."

478

■ Although it may be argued from the above that a factual issue, whether advice was given by defendants to Jessie Florence, was presented to the trial court, this, by itself, does not preclude the entry of a summary judgment. In order to preclude the entry of a summary judgment, the factual issue must be "material." Section 57(3) of the Illinois Civil Practice Act (Ill Rev Stats 1963, c 110) provides:

> "The judgment or decree sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any *material* fact and that the moving party is entitled to a judgment or decree as a matter of law . . . ." (Emphasis supplied.)

As is stated in ILP, Judgments, c 5, § 73, p 186:

> "Where the only disputed issues of fact are such as do not relate to a relevant matter, the presence of such issues will not preclude the entry of summary judgment."

■ Summary judgments in favor of both defendants were properly entered on Count II. The time limitation in Article X of the policy rendered Jessie Florence ineligible for life insurance benefits under the policy one calendar year after the last date he rendered compensated service. At the expiration of that one year, absent the exercise of the "conversion privilege," the life insurance benefits ended. Therefore, even if the defendants negligently advised Jessie Florence as to disability premium provisions, the negligent advice and his reliance thereon had no causal connection with the fact that the life insurance benefits were not in force at the time of his death. Since the negligence alleged did not cause the harm which plaintiff alleged, the lapse of coverage, the question

of fact here, as to the existence of the negligently performed act, was not material to the disposition of this case and, therefore, could not have precluded the entry of summary judgment. Menge v. Liberty Nat. Bank, 36 Ill App2d 61, 183 NE2d 567 (1962); Metropolitan Life Ins. Co. v. Quilty, 92 F2d 829, 832 (7th Cir, 1937).

■ Count II as finally amended does not allege that the negligent advice given by defendants caused the failure of Jessie Florence, or the plaintiff, to take advantage of any life insurance conversion privilege the insured might have had under Article XI, section 3, of the policy. As the trial court was not presented with the question of negligent advice as to the life insurance "conversion privilege," this point cannot be assigned as error on appeal.

Finally, the plaintiff contends that the trial court should have allowed plaintiff to file her second amendment to the amended statement of claim, citing section 46(1) and (3) of the Illinois Civil Practice Act (Ill Rev Stats 1963, c 110); Snively v. Crownover, 321 Ill App 292, 296, 53 NE2d 7 (1944); and Williams v. Fredenhagen, 350 Ill App 26, 36, 111 NE2d 578 (1953). This proposed second amendment to Count I read as follows:

> "7(a) From and after May 12, 1960, Jessie Florence suffered a disability which prevented him from performing work in his regular occupation which continued until his death."

■ In our view of Count I, whether Jessie Florence was disabled from the last day he rendered compensated service is not material. It cannot affect the limitation which made Jessie Florence uninsured "after the date the Employee has failed to render compensated service for a period of one calendar year." We find

that the trial court did not manifestly abuse its broad discretion in denying plaintiff's motion to amend her statement of claim for the third time. Deasey v. City of Chicago, 412 Ill 151, 156, 105 NE2d 727 (1952).

For the reasons given above, the orders of the trial court granting defendants summary judgments against plaintiff and denying leave to amend are affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.