MACMOR MORTGAGE CORPORATION et al., Plaintiffs, v. THE EXCHANGE NATIONAL BANK OF CHICAGO et al., Defendants.—(THE EXCHANGE NATIONAL BANK OF CHICAGO et al., Third-Party Plaintiffs-Appellants, v. BOARD OF TRUSTEES OF JUNIOR COLLEGES, Third-Party Defendant-Appellee.)

(No. 60301; ▮▮▮▮▮▮)

First District (4th Division)—July 9, 1975.

Feiwell & Galper, of Chicago (George S. Feiwell, Michael A. Braun, and Daniel C. Meenan, Jr., of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Irvin I. Zatz, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Third-party plaintiffs (hereafter appellants) brought consolidated actions against the Board of Trustees of Junior Colleges, District No. 508 (hereafter the Board) seeking a declaratory judgment, injunctive relief, and money damages. The third-party complaint alleged that certain pre-condemnation actions of the Board constituted a "taking" of private property for public use without compensation.[1]

On motion for summary judgment, the court dismissed the third-party complaint with prejudice for failing to state a cause of action. The following issues are presented for our review in this appeal: (1) Did the conduct of the Board, in acquiring and demolishing the properties of other owners in the area, constitute a taking or damaging of appellants' property without just compensation; and (2) did the pleadings and affidavits present a genuine issue of material fact?

On September 15, 1972, Macmor Mortgage Corporation and Roy Gage Mortgage Corporation filed the original complaint in this cause seeking to foreclose first mortgage liens on the Royalton Hotel, located at 1806-12 West Jackson Boulevard, Chicago, Illinois, and the Alamac Hotel, located at 1934-38 West Jackson Boulevard, Chicago, Illinois. Title to the property was held by the Exchange National Bank of Chicago as trustee. As part of these foreclosure suits, appellants brought third-party actions against the Board seeking compensation for their property.

The material facts as revealed by the pleadings and affidavits may be

---

[1] The Board is authorized by statute to buy sites for college purposes, and to take and purchase the sites, either with or without the owner's consent, by condemnation or otherwise. Ill. Rev. Stat. 1971, ch. 122, § 103—36.

summarized thusly. In November 1966, the Board as governing body of the Junior College District for the city of Chicago, announced its plan to develop a new west side junior college. The projected long-range development is an 8-block area bounded by Adams Street on the north, Van Buren on the south, Wood Street on the east, and Damen Avenue on the west. Both of the hotels involved in this action are situated within the area designated as Phase III of the project.

Development of the junior college, now known as Malcolm X Junior College, commenced in November 1967 with the acquisition of a 4-block area immediately south of the Royalton and Alamac Hotels. Following the development of this area, the Board began to condemn or purchase the real estate within the Phase III area. By the end of 1971, the Board had acquired or razed virtually all of the property in the Phase III area with the exception of the Royalton and Alamac Hotels. Exchange was informed in March 1971 that further development in Phase III had been suspended while the Board awaited the allocation of additional funds required for completion of the project.

The third-party complaint alleged that the demolition of the buildings surrounding the two hotels destroyed the residential character of the area, destroyed the attractiveness of the hotels as residential property, and rendered the property unfit for its sole feasible use. These actions, averred appellants, directly interfered with and disturbed their right to the fair use and economic enjoyment of the property, thereby constituting a "taking" of the property without compensation. There is no allegation that the Board physically injured or damaged the hotels, and, in its answer, the Board denied that it had caused any harm to the subject property.

On November 1, 1973, the Board filed a motion for summary judgment, alleging that there was no genuine issue as to any material fact and that the third-party complaint failed to state a cause of action. Attached thereto was the affidavit of Irving B. Slutsky, associate vice-chancellor of the City Colleges of Chicago, stating that the Board had neither commenced an action to condemn the hotels nor entered into an agreement with the owners concerning the purchase of their real estate.

Affidavits submitted on behalf of appellants in opposition to the motion for summary judgment attested to the extensive deterioration of the area as a result of the incomplete condemnation by the Board. Edward Gottlieb, an officer, director, and shareholder of the hotel corporations, alleged by affidavit that on October 6, 1972, Dr. Oscar Shabat, chancellor of the Chicago City Colleges, told him that the Board was aware of the deterioration of the area and intended to delay the condemnation proceedings so as to take advantage of the reduced value of the real estate

and mortgage foreclosure proceedings which would terminate the owners' interest in the real estate. Mr. Slutsky filed a second affidavit, denying that any employee, agent, or representative of the Board was authorized to wait until the value of the real estate was depressed before commencing condemnation proceedings and further averring that appellants had been advised that funds were not available for the acquisition of their property. An affidavit was also filed by Dr. Shabat denying the allegations contained in the Gottlieb affidavit and averring that the sole reason appellants' property had not been acquired was that State funds had not yet been made available for its purchase.

The trial court, after considering the pleadings, briefs, and affidavits filed by the parties, found that there was no genuine issue as to any material fact and that the reasonableness of the Shabat affidavit was far greater than that of the one submitted by Gottlieb. The court then entered summary judgment in favor of the Board on the grounds that the third-party complaint failed to state a cause of action. This appeal followed.

The first question we shall consider is whether the conduct of the Board constituted a "taking" of appellants' property without just compensation. They cite the provisions of the fifth amendment to the United States Constitution and article I, section 15, of the Illinois Constitution of 1970, which states in pertinent part as follows: "Private property shall not be taken or damaged for public use without just compensation as provided by law."

Appellants argue that a decline in the residential character of the neighborhood resulted from the Board's acquisition and demolition of substantially all of the property in the project area with the exception of their two hotels. It is further contended that the Board's partial condemnation interfered with appellants' economic use and enjoyment of the hotels, and that they are entitled to be compensated for the damage to the value of their property which resulted. However, it is uncontroverted that condemnation proceedings were not instituted to acquire the subject property and that the Board caused no direct physical damage to the real estate.

■■ We believe that, under the prevailing law in this State, the precondemnation activities of the Board did not constitute a "taking" of the property as charged in the third-party complaint. Illinois courts have consistently followed the rule of the majority of jurisdictions, which is that mere planning or plotting in anticipation of a public improvement does not constitute a "taking" or damaging of property. (*City of Chicago v. Loitz* (1975), 61 Ill.2d 92; *Chicago Housing Authority v. Lamar* (1961), 21 Ill.2d 362, 172 N.E.2d 790; *Eckhoff v. Forest Preserve District* (1941),

377 Ill. 208, 36 N.E.2d 245.) See Annot., 37 A.L.R.3d 127, 132-134 (1971), for a listing of cases from other jurisdictions.

The Illinois law is clearly set forth by our supreme court in the recent case of *City of Chicago v. Loitz*, 61 Ill.2d 92, which was decided in March 1975. Loitz, owner of real estate upon which a gasoline station was operated, was advised of a project to realign two streets at the point where his property was located. The city offered $70,000 for the property and further advised that condemnation proceedings would be instituted if the offer was refused. Following negotiations, Loitz accepted the city's offer of $82,000. In view of the pendency of the sale, Loitz' gasoline supplier terminated negotiations to remodel the station and further refused to continue supplying gasoline for resale.

Subsequently, the City filed a demolition action based upon numerous building code violations. A counterclaim to the demolition suit was filed, alleging that the city's precondemnation actions constituted a "taking" of the subject property and that the city was obligated to pay the full value. Condemnation proceedings were never instituted. The trial court granted the city's motion to dismiss the second amended counterclaim for failure to state a cause of action and the Illinois Supreme Court affirmed, holding that the city's precondemnation activities did not constitute a de facto "taking" of the property. The policy considerations underlying its decision were stated by the court as follows:

> "It is apparent, of course, that property values may be, and frequently are, affected by preliminary planning of public improvement projects. It is not uncommon that proposed projects for various reasons are abandoned prior to the institution of condemnation proceedings. In such cases the value of property which would have been affected by the proposed project may have been adversely affected by the pendency of the project, as was the property of counterplaintiffs in this case. While it is not entirely clear that counterplaintiffs did all that might have been done to protect and preserve the value of their property, appealing arguments can be presented for compensation by the owners of property, the value of which is lessened as a result of proposed and subsequent abandoned public improvement projects. There are, however, persuasive countervailing considerations, many of which are stated in the City's brief. They include the fact that imposition of liability for precondemnation activities would tend to inhibit free and open discussion of proposed public improvements; that such activities provide notice to those in the area that their future plans may be affected; that the absence of liability for the ordinary precondemnation activities promotes flexibility in public planning

and recognizes the difficulties inherent therein under present-day conditions in which large portions of public projects are financed from Federal funds, the availability of which, when needed, is less than certain; and that the problems involved in determining the date upon which a *de facto* taking occurred, were that principle to be recognized, are substantial." 61 Ill.2d 92, 96-97.

In the case before us, there was neither a written contract to purchase the real estate nor were condemnation proceedings commenced. The precondemnation activities of the Board with respect to appellants' property were, in our opinion, far less extensive than those that occurred in *Loitz,* for here there is no allegation that price negotiations were ever commenced or that a price agreement was reached. Thus, we believe that this case is controlled by the court's decision in *Loitz* and, accordingly, hold that the Board's actions were not sufficient to constitute a "taking" of appellants' property.

In *Chicago Housing Authority v. Lamar* (1961), 21 Ill.2d 362, 172 N.E.2d 790, a landowner claimed he was entitled to compensation for depreciation of the value of his property because of deterioration of the neighborhood as a result of the existence of vacant buildings in the area which had been acquired by condemnation. Lamar sought to have the value of his property fixed as of November 7, 1958, the date a verbal agreement for the voluntary conveyance of the property was allegedly made, instead of September 1959 when the petition to condemn the property was filed. During the interim, the premises were vandalized, causing a substantial diminution in the fair market value of the property. The Illinois Supreme Court affirmed the lower court's dismissal of Lamar's claim for damages and held that the petition date controls the date of valuation of the property. The court, at page 365, stated:

"It is a well-recognized proposition of law that land is not damaged by reason of preliminary procedure looking to its appropriation to a public use. [Citations.]"

The cases relied upon by appellants are from a distinct minority of Federal and State courts which have held that various precondemnation activities constituted a de facto "taking" of private property. (*Foster v. City of Detroit* (6th Cir. 1968), 405 F.2d 138; *Sayre v. United States* (N.D. Ohio 1967), 282 F.Supp. 175; *Madison Realty Co. v. City of Detroit* (E.D. Mich. 1970), 315 F. Supp. 367.) These cases do not represent the present law in Illinois or in the majority of jurisdictions. Moreover, appellants authorities are distinguishable on the facts from the case at bar. In *Foster,* the city allowed condemnation proceedings to pend for 10 years; in *Sayre,* eminent domain proceedings were commenced and the city refused to issue permits to improve and repair the property; and in

*Madison Realty*, the city denied its services to plaintiffs and refused to issue permits for the repair of the property. By contrast, in the case before us no condemnation proceedings were instituted, no interference with any easement of appellants' property has been alleged, no *lis pendens* has been filed, and there has been no denial of permits to repair or maintain the property.

In view of the foregoing, we hold that the conduct of the Board in acquiring and demolishing the properties of other owners in the area, resulting in a decline in the value of appellants' property, was not sufficient to constitute a "taking" or damaging of the property in violation of the United States and Illinois constitutions.

Appellants further contend that summary judgment was improper because an issue of fact was created by the conflicting affidavits of Gottlieb and Shabat. The affidavits concerned an alleged conversation between the two parties in which Dr. Shabat reportedly stated that the Board intended to take advantage of mortgage foreclosure proceedings in order to obtain appellants' property at a reduced price. This allegation was denied by Dr. Shabat, who averred that appellants' property had not been acquired solely because government funds necessary to purchase it had not been made available. The trial court concluded that the Shabat affidavit was far more reasonable than that of Gottlieb.

■■ A party is entitled to summary judgment only if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. (Ill. Rev. Stat. 1971, ch. 110, § 57(3).) However, not every issue of fact is sufficient to defeat a motion for summary judgment. In order to preclude the entry of a summary judgment, the factual issue must be "material." *Florence v. Travelers Insurance Co.* (1965), 59 Ill.App.2d 470, 208 N.E.2d 95; *Cibis v. Hunt* (1964), 48 Ill.App.2d 487, 199 N.E.2d 246.

We do not consider the alleged conversation on October 6, 1972, between Gottlieb and Shabat to be a material issue in this case. Mortgage foreclosure proceedings had already been commenced at the time the conversation allegedly occurred. Appellants' cause of action is grounded upon a "taking" of property, and the statements attributed to Dr. Shabat do not relate to physical damage to the property by the Board or its interference with any easement or right of ingress or egress from the property. Therefore, we hold that the affidavits did not create a material issue of fact with respect to the Board's "taking" of appellants' property and that the summary judgment was properly granted.

In view of the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

DIERINGER, P. J., and ADESKO, J., concur.